# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLES H. SMITH, )<br>       Plaintiff, )<br> )<br>vs. )<br> )<br>JOANNE B. BARNHART, )<br>Commissioner of the Social )<br>Security Administration, )<br>       Defendant. ) | Case No. 05-CV-29-CVE-FHM |

## REPORT AND RECOMMENDATION

Plaintiff, Charles H. Smith, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] The matter has been referred to the undersigned United States Magistrate Judge for report and recommendation.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less

---

[1] Plaintiff received Social Security benefits beginning on July 21, 1988, which ended in August 2000, due to Plaintiff's return to work. [R. 70]. Plaintiff filed an application for Disability Insurance Benefits on August 3, 2001, alleging an onset date of November 23, 2000. [R. 51]. The application was denied initially and upon reconsideration. An initial hearing before an Administrative Law Judge (ALJ) was held August 14, 2003. [R. 153]. The hearing was suspended and reconvened on November 18, 2003. [R. 155-176, 177]. By decision dated November 28, 2003, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied review of the ALJ's decision on November 16, 2004. The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir. 2003). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995); *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495 (10th Cir. 1992).

Plaintiff was born August 2, 1960, and was 43 years old at the time of the hearing. [R. 157, 187]. He claims to be unable to work due to brain injuries stemming from a motorcycle accident in 1988. [R. 165-166, 197]. The ALJ determined that the medical evidence indicates Plaintiff has cognitive disorder, personality disorder and right eye blindness which are severe impairments. [R. 19]. Despite these impairments, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to return to his past relevant work as a night stocker. [R. 21]. He found, therefore, that Plaintiff is not disabled as defined by the Social Security Act. The case was thus decided at step four of the five-step evaluative sequence for determining whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

Plaintiff asserts the ALJ erred by: 1) failing to develop the record; 2) improperly determining the night stocker work was substantial gainful activity; and 3) failing to follow the required Step 4 analysis. [Plaintiff's Brief, p. 4]. For the following reasons,

the Court recommends the decision of the Commissioner that Plaintiff is not disabled be affirmed.

## Developing the Record

Plaintiff gives a history of having been injured in a motorcycle accident in 1988 which resulted in right eye blindness and mental impairments consisting of memory and "attitude" problems. [Plaintiff's brief, p. 4, R. 75, 106, 113]. He received benefits from the Social Security Administration commencing July 21, 1988. [R. 17]. His benefits were discontinued in August 2000 because Plaintiff returned to work. [R. 57, 70]. Plaintiff did not contest the agency's decision to terminate benefits on the basis that he had returned to work and was, therefore, no longer disabled. He does contend however, that his disability continued since his injury in 1988, despite the fact that he had returned to work. He asserts that the medical records from the prior claim are highly probative to the issues in the present claim and that the ALJ should have obtained and considered the medical records from the prior claim before reaching a conclusion in this claim.

Contrary to Plaintiff's contention, his return to work established that he was no longer disabled. See 20 C.F.R., § 404.1520(a), (b) ("If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education and work experience."); *Jozefowicz v. Heckler*, 811 F.2d 1352, 1355 (10th Cir. 1987); *Kemp v. Bowen*, 816 F.2d 1469, 1474 (10th Cir.1987) (If the claimant is presently pursuing work that constitutes gainful activity, then that person is not disabled, even if medically impaired). Thus, a claimant who believes he subsequently became eligible for disability benefits, must

file a new application. *See Durga v. Sec. of Health and Human Services*, 899 F.2d 14 (6th Cir. 1990) (Once the [Commissioner] properly determines that disability benefits must cease, a claimant may obtain benefits again only by filing a new application (citing 20 C.F.R §§ 404.315, 404.316)). The only question properly before this Court, then, is whether substantial evidence supports the Commissioner's finding that Plaintiff was not disabled based upon his application for benefits filed on August 3, 2001.

## Medical Records

By Plaintiff's own admission, he has received no medical treatment except for refills of his medication for hypertension since November 2000. [R. 82]. Indeed, Plaintiff's medical records from Morton Comprehensive Health Services, Inc.,for the time period between September 2000 and March 2001, reveal complaints were related only to high blood pressure and cholesterol. [R. 101-105]. Records from Family and Children's Services reflect Plaintiff underwent clinical assessment of his problems in relationships and work on August 1, 2002. [R. 143-149]. The severity of his presenting problem was rated as "small concern" with a GAF of 51.[2] Plaintiff declined treatment. [R. 145].

Counsel for Plaintiff admits the medical records in this case are "quite sparse." [Plaintiff's brief, p. 2]. His argument suggests that the fault for this is the Commissioner's. He claims that because Plaintiff's "representative was unaware of

---

[2] A global assessment of functioning (GAF) score "is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." A GAF score of 51-60 indicates moderate symptoms, such as a flat affect, or moderate difficulty in social or occupational functioning. American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. 2000) (DSM-IV-TR).

the prior period of disability" the duty of the ALJ to develop the record included a requirement to "communicate to the representative the fact that Mr. Smith had previously been found to be disabled..." and to include the medical records from that previous period of disability as part of this file. [Plaintiff's brief, p. 5-6]. The Court concludes that the Commissioner was not required to obtain and review the medical records from the prior claim before considering the merits of this claim. Counsel's allegation that the ALJ did not mention the prior period of disability at the hearing and that his representative was unaware that Plaintiff had received benefits from his prior claim is belied by the record. At the hearing on August 14, 2003, Plaintiff confirmed during his questioning by the ALJ that he had filed three applications for benefits and that he drew benefits from July 21, 1988 through August 2000. [R. 166]. Plaintiff's attorney was present during this testimony. [R. 155].

The ALJ discussed the medical evidence with Plaintiff's attorney at the first hearing. [R. 156-157]. Counsel requested that the ALJ hold the record open for medical records from the Family and Children Services clinic. *Id.* At the conclusion of the second hearing, after Plaintiff testified that his injuries were caused by a motorcycle wreck in 1988 and that his condition had been "a living hell" for 15 years, his attorney told the ALJ that the record was fully developed and complete. [R. 180,190, 197, 204]. Because Plaintiff was represented by counsel at the administrative hearing, the ALJ was entitled to rely on the claimant's counsel to structure and present his case in a way that Plaintiff's claims were adequately explored." *See Hawkins. v. Chater*, 113 F.3d 1162, 1167 (10th Cir.1997) (When a

claimant is represented by counsel at the hearing, the burden ordinarily is on counsel to present issues in need of further exploration.).

The regulations make it clear that, as a general matter, the claimant must provide the evidence to support his claim. See 20 C.F.R. §§ 404.1512. Plaintiff cites no authority relieving him of this obligation with respect to the requirements for a favorable decision at step four--a stage at which he bears the burden of proof. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir.1997); *Andrade v. Secretary of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir.1993). To require further investigation, a claimant must raise the issue to be developed and show that it is substantial. *See Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir.1991); *Musgrave v. Sullivan*, 966 F.2d 1371, 1376-77 (10th Cir.1992). In any event, the speculative nature of Plaintiff's present suggestion that the agency purposefully omitted probative evidence from the file is not persuasive. In light of the failure of Plaintiff's counsel to suggest earlier records were necessary for the determination or to request that the ALJ pursue the matter, Plaintiff's allegation that the Commissioner did not properly develop the record by obtaining medical records from the time period prior to the alleged onset date in this application is without merit. The ALJ's duty to develop the record is limited to those issues that are material. *See Baca v. Department of Health & Human Servs.*, 5 F.3d 476, 479-80 (10th Cir.1993).

Consultative Exam/Testing

Plaintiff underwent a consultative examination by Ronald C. Passmore, M.D., on behalf of the Social Security Administration, on September 11, 2001. [R. 113-116]. Dr. Passmore related Plaintiff's history of significant brain trauma in July 1988 and

complaints of memory loss problems since then. [R. 113]. Dr. Passmore's mental status examination revealed evidence of cognitive disorder, poor memory problems and paranoia. Dr. Passmore also indicated Plaintiff may have some personality disorder which leads him to be very aggressive. The ALJ's decision indicates that he accepted Dr. Passmore's assessment. [R. 20]. He found that Plaintiff's cognitive disorder and personality disorder would significantly affect Plaintiff's ability to engage in work related activities. *Id.* The ALJ found Plaintiff's non-exertional limitations impacted his RFC and restricted his work activities to simple and repetitive tasks and to incidental contact with the public.

Plaintiff contends that, in view of Dr. Passmore's assessment, the need for additional mental testing is clearly established in the record. [Plaintiff's brief, p.8]. Plaintiff asserts that Listing 12.02 indicates two neuropsychological tests would be appropriate. *Id.* However, Plaintiff does not allege that his condition meets the listing. When asked at the hearing, Plaintiff's attorney stated he was not making an argument that Plaintiff meets any of the listings. [R. 186]. The only limitations claimed by Plaintiff are those affecting his ability to remember instructions and get along with others. [R. 75, 188, 191]. The ALJ's RFC determination includes allowances for those limitations. [R. 21]. In light of the broad latitude accorded the ALJ with regard to ordering a consultative examination and the failure of Plaintiff to demonstrate that such tests were necessary in order to resolve the issue of impairment in this case, the Court finds no error on the part of the Commissioner in not ordering further testing regarding Plaintiff's mental impairments. *See Diaz v. Secretary of Health & Human Servs.*, 898

7

F.2d 774, 778 (10th Cir.1990)(Commissioner is given broad latitude in making a decision to order such an examination).

The Court finds the Commissioner was not required to obtain and review medical records from the time period prior to the onset date alleged by Plaintiff in his August 3, 2001 application for benefits or to order another consultative examination and/or further testing. The Court finds no failure on the part of the Commissioner in her duty to develop the record.

### Night Stocker Job as Substantial Gainful Activity (SGA)

Plaintiff is correct that in order for a job to be considered past relevant work (PRW), it must have (1) occurred within the past fifteen years (the so-called recency requirement), (2) was of sufficient duration to enable the worker to learn to do the job (the so-called duration requirement), and (3) was substantial gainful employment. *Jozefowicz v. Heckler*, 811 F.2d 1352, 1355 (10th Cir. 1987) (citing 20 C.F.R. § 416.965(a) (1986)). Plaintiff contends the night stocker job, identified by the vocational expert whose testimony was adopted by the ALJ regarding work Plaintiff can perform with his RFC, does not meet the third requirement under the regulations. Substantial gainful activity is work activity that is both substantial and gainful:

> (a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.
> (b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.
> (c) Some other activities. Generally, we do not consider activities like taking care of yourself, household tasks,

>hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572. Plaintiff contends there is no indication in the record that he performed the night stocker job at SGA levels. [Plaintiff's brief, p.9]. He argues that "it is not at all clear when, or if, [he] performed the job of night stocker." *Id.* Again, the record indicates otherwise. At the first hearing, on August 14, 2003, the ALJ and Plaintiff's attorney had a lengthy discussion regarding jobs that Plaintiff had held. [R. 167-176]. The attorney acknowledged "there is some SGA there" among Plaintiff's work. [R. 172]. The hearing was delayed until the attorney could obtain more information from Plaintiff and his family regarding the jobs and earnings Plaintiff had held. [R. 173]. When the hearing reconvened, on November 18, 2003, Plaintiff's attorney identified the jobs that "qualified as his past relevant work." [R. 181. Among the jobs listed was "stocking jobs." *Id.* Plaintiff was then questioned about the specific demands for each of the jobs his attorney had identified as PRW. When asked what he did as a stocker, Plaintiff testified that he worked overnight, stocking food stores at WalMart and Budd Foods. [R. 182-183]. During questioning by his attorney regarding his inability to perform work activities, Plaintiff did not mention any problems he had performing stocking duties. Before his question to the vocational expert, the ALJ characterized the list of jobs given by Plaintiff's attorney as those jobs "we've agreed ... are past relevant work." [R. 200]. The VE then identified the skill levels,

exertional requirements and SVP[3] of those jobs, including the overnight stocker job. *Id.*

Plaintiff again offers speculation for his argument. He asserts that, "[i]t seems unlikely that [he] worked as a night stocker at either of the companies" that were jobs "of any significance." [Plaintiff's brief, p. 9-10]. Applying Plaintiff's reasoning, it is likely that Plaintiff's work for the temporary work and placement agencies listed in the Social Security Administration's job summaries report was performed as a stocker. [R. 61-66]. Because the ALJ was entitled to rely upon counsel's list of Plaintiff's past relevant work, and because the record contains no evidence that contradicts his finding, there is no basis for overturning the ALJ's determination that Plaintiff's past work as a overnight stocker was substantial gainful activity.

## Step Four Analysis

Plaintiff's final allegation of error involves the ALJ's findings with regard to the demands of Plaintiff's past relevant work as a night stocker and Plaintiff's ability to return to that work in light of his RFC. Plaintiff claims the ALJ failed to perform the analysis required by *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir.1996) ("To make the necessary findings, the ALJ must obtain adequate "factual information about those work demands which have a bearing on the medically established limitations" (citing SSR 82-62, Soc. Sec. Rep. Serv., Rulings 1975-1982, at 812).

---

[3] SVP is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Dictionary of Occupational Titles* ("DOT"), Appendix C. The DOT indicates that, at SVP 2, a job is learned during "[a]nything beyond short demonstration up to and including 1 month." *Id.*

10

The RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally a sufficient basis for a finding of "not disabled." Past work experience must be considered carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional activities required in this work. Social Security Ruling (SSR) 82-62, *3 "Titles II and XVI: A Disability Claimant's Capacity To Do Past Relevant Work, In General," Social Security Rulings, Cumulative Edition, 1982, p. 158.

The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work.  Determination of the claimant's ability to do PRW requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy. *Id.*

Plaintiff testified that he had performed stocking work in a warehouse. [R. 181]. Plaintiff testified that his impairments stem from his injuries in 1988. [R. 190].  Plaintiff has not asserted that his condition has changed or worsened since that time.  Nothing

in the record or in Plaintiff's briefs suggests that Plaintiff's present limitations are greater than those that existed when he performed his past relevant work as an overnight stocker. Nor did Plaintiff testify that he had been unable to perform his work as an overnight stocker because of his limitations. The VE offered a description of the stocker job and testified that, with the RFC assessment as given by the ALJ, Plaintiff could return to the overnight stocker work. [R. 202].

Because the ALJ gave adequate reasons for his findings and because he sufficiently linked his findings to the evidence, there is no reason to overturn his conclusion that Plaintiff was able to return to his past relevant work as an overnight stocker as he performed it. Under the sequential evaluation process, the claimant bears the burden of showing that he is not presently engaged in substantial gainful activity, that he has a medically severe impairment or combination of impairments, and that the impairment or combination of impairments prevents him from performing his past work. *Bowen v. Yuckert*, 482 U.S. 137,107 S.Ct. 2287, 2294 n. 5 (1987). Plaintiff has not done so in this case.

### Conclusion

The undersigned United States Magistrate Judge RECOMMENDS that the decision of the Commissioner denying benefits be affirmed and that judgment for Defendant be entered in this case.

In accordance with 28 U.S.C. §636(b) and Fed.R.Civ.P. 72(b), a party may file specific written objections to this report and recommendation. Such specific written

objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma within ten (10) days of being served with a copy of this report.

If specific written objections are timely filed, Fed.R.Civ.P. 72(b) directs the District Judge to:

> make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Fed.R.Civ.P. 72(b); *see also* 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). **Only a timely specific objection will preserve an issue for de novo review by the District Court or for appellate review.**

SUBMITTED this 9th day of February, 2006.

*[signature: Frank H. McCarthy]*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE

13